IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05cv210

| | |
|---|---|
| JEFFREY A. HUFFSTETLER,<br><br>  Plaintiff,<br><br>Vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>  Defendant. | MEMORANDUM<br>OF DECISION |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(c) and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings and conclusions. A judgment reflecting such conclusions is being entered simultaneously herewith.

**FINDINGS AND CONCLUSIONS**

**I. Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on February 2, 2004. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing on June 25, 2004, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the

Appeals Council. Plaintiff's request for review was denied by action dated March 17, 2005, in which the ALJ's decision was affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

II.     **Factual Background**

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are summarized briefly and set forth herein in order to aid further review.

At the age of 36, plaintiff injured his back on January 16, 2001, while on the job when he attempted to lift a heavy object. Administrative Record, at 17 (hereinafter "A.R."). He has past work experience as a roofer, welder, painter, construction fabricator, concrete finisher, and in security, but has not engaged in substantial gainful activity since the accident. A.R., at 29. As a result of the accident, plaintiff underwent a microdiskectomy, which was performed by Dr. Scott Ellison. Plaintiff's status post-surgery is that he suffers degenerative disc disease, which the ALJ found to be "severe." Id. In addition to such physical impairment, plaintiff also suffers from anxiety and depression. The ALJ found that such psychological impairments have resulted in moderate restriction of plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace. Id. The ALJ found, however, that such psychological impairments have not resulted in episodes of decompensation of extended duration. A.R., at 25. The medical evidence contained in the

Administrative Record is accurately summarized and discussed at length by the ALJ at pages two through eight of the administrative decision. A.R., at 17-23.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Standard for Evaluating Allegations of Pain and Other Subjective Complaints

The correct standard and method for evaluating claims pain and other subjective symptoms (such as anxiety and depression) in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective

complaints was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[1]

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work. Id.; see also 20 C.F.R. § 416.929(c).

Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4)

---

[1] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

4

objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

V.      **Substantial Evidence**

   A.      **Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

   B.      **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

After determining that plaintiff did not have the ability to return to his past work as a welder, the ALJ then considered whether plaintiff retained the residual functional capacity to perform any work available in the national and local economies.

The ALJ determined that plaintiff's degenerative disc disease was "severe," A.R., at 29, and that in addition to such physical impairment, plaintiff also suffers from anxiety and depression. Id. The ALJ found that such psychological impairments have resulted in moderate restriction of plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace. Id. The ALJ found, however, that such psychological impairments have not resulted in episodes of decompensation of extended duration. Id.

As to the vocational impact of such impairments, the ALJ determined that plaintiff retained the residual functional capacity to perform light work, with no frequent or repetitive bending, climbing, stooping, squatting, or balancing, and with a sit/stand option. Based on such limitations, the ALJ determined that plaintiff was unable to perform his past relevant

work as a welder. Id. At the time of decision, the ALJ found plaintiff to be a younger individual with a high school education.

Based on an exertional capacity for light work, his age, education, and work experience, the ALJ determined that the "Grids" would direct a finding of "not disabled." Id. Inasmuch as the ALJ had also determined that plaintiff suffered from non-exertional impairments, he employed a vocational expert (hereinafter "V.E."), posed a hypothetical which included limitations drawn from the medical and psychological evidence the ALJ found credible. Based on such hypothetical, the V.E. testified that a number of specific jobs existed in North Carolina which this plaintiff could perform. The ALJ, thereafter, determined that plaintiff was not disabled.

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

I. Whether the Commissioner erred as a matter of law in not properly evaluating the well-supported medical evidence from treating sources as to the severity of plaintiff's mental impairments.
II. Whether the Commissioner erred as a matter of law in failing to sustain her burden of establishing that there is other work in the national economy that plaintiff can perform.

Plaintiff's Brief, at 2.[2] Plaintiff's assignments of error will be discussed seriatim.

---

[2] Plaintiff is advised that the brief contained no page numbers, which are helpful during the course of review.

## 2. First Assignment of Error: Treating Source

Plaintiff's first assignment of error is that the Commissioner erred as a matter of law in not properly evaluating the well-supported medical evidence from treating sources as to the severity of plaintiff's mental impairments. Specifically, plaintiff takes issue with the ALJ's failure to fully credit the opinions of Dr. Levine, a psychotherapist he saw for about a year, and Mr. Nichols, a social worker he saw on two occasions separated by an interval of a year. The court will first consider the psychological care plaintiff received, then determine what, if any, deference the ALJ gave to a challenged provider, and whether such was appropriate.

After his injury, plaintiff began treatment with Dr. Thomas White. A.R., at 62. Dr. White, plaintiff's primary care physician, noted in February 2001 that plaintiff was nervous and anxious and by August of that year, assessed that he had an anxiety disorder or a panic disorder with anxiety worthy of medication. A.R., at 121-123, 127. The ALJ fully credited the findings of plaintiff's primary physician and plaintiff does not herein challenge the ALJ's consideration of any of Dr. White's opinions.

On referral from Dr. White, Dr. Julie Levine, Psy. D, treated plaintiff from late 2001 through part of 2002 for what plaintiff characterized as panic attack "spells." A.R., at 218. In May 2002, she offered an assessment that plaintiff had marked restrictions or difficulties in functioning. A.R., at 270-71. Dr. Amy Metzger, the psychiatrist who actually saw plaintiff for medication, offered a diagnosis of panic disorder in November 2001, A.R., at 208, and

major depressive disorder and panic disorder in February 2003. A.R., at 272-73. John Riley, Ph.D., evaluated plaintiff in March 2003 for the psychological component of evaluation at a pain center. A.R., at 201-02.

Plaintiff admitted that his pain was being managed adequately, but still felt it was significant and disabling. A.R., at 202. Dr. Riley's impression was a full fledged chronic pain syndrome, with signs of a major depressive episode, worthy of aggressive efforts in treating the depression, including increased medication and counseling. Id.

Plaintiff had varying degrees of benefit from group therapy and individual sessions he attended at a mental health center in late 2003 and early 2004, aimed at helping him reduce the frequency and intensity of panic attacks. A.R., at 280, 287.

Mr. Nichols, the social worker who saw plaintiff at the mental health center, assessed in June 2004, that plaintiff had marked restrictions in functioning and in the ability to perform the mental demands of work due to persistent depressive symptoms. A.R., at 312. In January 2004, plaintiff admitted to a staff psychiatrist at the mental health center, Dr. Patel, that he had not kept his medication appointments and had not been taking any medication for his depression, A.R., at 288, and medication was then prescribed. A.R., at 288. Dr. Patel found the medication appropriate in February 2004. A.R., at 316.

Turning next to consideration of the ALJ's review of the evidence concerning plaintiff's psychological treatment, it appears that the ALJ discussed all of the relevant psychological evidence, and that he discussed Dr. Levine's findings at length at pages four

and five of the decision. In addition, the ALJ noted Mr. Nichols observations at page six. Beginning at page 12 of the decision, the ALJ thoroughly discusses the opinions of Dr. Levine and Mr. Nichols, the inconsistencies between those opinions and the clinical notes, and provides his reasons for not fully crediting such opinions. Specifically, the ALJ wrote that Dr. Levine's treatment notes do not "show repeated episodes of decompensation of extended duration," and that Mr. Nichols' impressions were not fully credible because he "did not treat the claimant over a one year period and his treatment notes do not show that the claimant was impaired as he indicated." A.R., at 27.

The opinion of a treating physician may be disregarded only if there is persuasive contradictory evidence. Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).

> Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ.

Id., at 187. A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Id. Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established contemporaneous medical records. See 20 C.F.R. § 404.1527(d)(4).

Plaintiff's assignment of error is that the ALJ failed to weight these opinions as those of a treating source and that the ALJ failed to properly explain why he disregarded such sources' opinions. Foremost, the court finds that neither Dr. Levine nor Mr. Nichols is a treating source. As to Dr. Levine, it cannot be argued that the portion of a year that she saw

plaintiff on referral was a "prolonged period of time," Mitchell v. Schweiker, especially where the review spanned in excess of three years. As to Mr. Nichols, and with all due respect to those laboring in the field of social work, a social worker is as a matter of law not a proper treating source, 20 C.F.R. §404.1513, and it would have been error for the ALJ to have credited Mr. Nichols' opinion with anything more than that of a lay person.

Even if it could be argued that Dr. Levine was a treating source, an ALJ is not bound by even a treating source's conclusions where they are inconsistent with clearly established contemporaneous medical records. See 20 C.F.R. § 404.1527(d)(4). After closely reviewing not just Dr. Levine's conclusions but also her clinical notes, the ALJ found precisely what is prohibited by the regulation: diagnoses of disabling impairments that are not only unsupported but contraindicated by the clinical notes.

The court can find no merit to plaintiff's first assignment of error.

### 3. Second Assignment of Error

In his second assignment of error, plaintiff contends that the Commissioner erred as a matter of law in failing to sustain her burden of establishing that there is other work in the national economy that plaintiff can perform. Plaintiff's second assignment of error is a recasting of his first in that the centerpiece of his argument is that the ALJ failed to reflect the conclusions of Dr. Levine and Mr. Nichols in his hypothetical to the ALJ.

Hypothetical questions posed by an ALJ to a VE must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain or other

subjective symptoms, if any. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984).

The undersigned has closely reviewed the transcript of the hearing at which the ALJ posed his hypothetical to the VE, which begins at page 363 of the Administrative Record and ends at page 366. Because plaintiff's conditions and limitations were accurately portrayed to the vocational expert, the ALJ did not fail to consider all the evidence, and his reliance on the opinion of the VE that jobs were available to a person with plaintiff's limitations was proper. Close review of the transcript reveals that counsel for plaintiff herein was present at that hearing and while the ALJ offered her an opportunity to either object to the question, to question the VE herself, or to comment, plaintiff's counsel herein declined. This court simply cannot find error where the ALJ properly excludes medical conclusions that are arguably contradicted by that doctor's own notes, and no error can in turn be found where such doctor's unsupported conclusions are properly excluded from a hypothetical.

    **4.**    **Other Issues**

        **a.**    **Failure to Find Disability at the Third Step of the Sequential Evaluation Process**

At page 10 of his brief, plaintiff argues that the ALJ should have found disability at the third step of the sequential evaluation process. Again, plaintiff argues that the ALJ should have given greater weight to the opinions of Dr. Levine and Mr. Nichols that

plaintiff's condition meets or equals a listed impairment 12.04.  See 20 C.F.R. Appendix 1, Subpart P, Regulations No. 4.  Unlike the fifth step of the sequential evaluation process, the plaintiff bears the burden of proof of production at the third step, Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995), and an ALJ is not required to fully analyze whether an impairment meets or equals a listing unless there is *factual support* that a listing could be met.  Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986).  To prevail at this step of the sequential evaluation process, a plaintiff is required to show that he meets or equals all of the specified medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).

Plaintiff thus contends that the ALJ should have made such a finding because evidence of record demonstrates that his mental impairment met Listing 12.04 of Appendix 1, Subpart P of Regulation No. 4.  The burdens of production and persuasion[3] at step three (as well as step four), however, are plaintiff's and not the Commissioner's to show that her condition met the requirements of a listed impairment. See 20 C.F.R. § 404.1520.  Listing 12.04, "Affective Disorders," concerns a mental impairment that is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.04.  That listing provides, as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders

---

[3] Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.     Medically documented persistence, either continuous or intermittent, of one of the following:

    1. Depressive syndrome characterized by at least four of the following:

        a. Anhedonia or pervasive loss of interest in almost all activities; or

        b. Appetite disturbance with change in weight; or

        c. Sleep disturbance; or

        d. Psychomotor agitation or retardation; or

        e. Decreased energy; or

        f. Feelings of guilt or worthlessness; or

        g. Difficulty concentrating or thinking; or

        h. Thoughts of suicide; or

        i. Hallucinations, delusions or paranoid thinking; or

    2. Manic syndrome characterized by at least three of the following:

        a. Hyperactivity; or

        b. Pressure of speech; or

        c. Flight of ideas; or

        d. Inflated self-esteem; or

        e. Decreased need for sleep; or

        f. Easy distractibility; or

        g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

        h. Hallucinations, delusions or paranoid thinking;

    Or

    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

    And

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

**14**

> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration;
>
> Or
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> > 1. Repeated episodes of decompensation, each of extended duration; or
> > 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> > 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Id. To establish disability based upon meeting the requirements of Listing 12.04, a claimant has the burden of providing to the Commissioner evidence satisfying the "A" criteria and the "B" criteria. Id. To meet the "A" criteria for depressive syndrome, plaintiff must show at least four of the following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; or hallucinations, delusions, or paranoid thinking. 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.04(A)(1). Plaintiff must additionally demonstrate at least two of the following under the "B" criteria: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining

15

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.04(B).

The medical evidence fails to establish that the signs and symptoms of plaintiff's mental condition were sufficiently severe to satisfy the requirements of Listing 12.04. Indeed, the ALJ fully considered this listing . A.R., at 25, 29. While there is no requirement that the evidence submitted by plaintiff in proof of the listing level severity come only from an acceptable treating source, there must be a showing that the criteria is met, a showing not made here. Even at the third step, the ALJ would have been remiss if he had fully credited the opinions of Dr. Levine and Mr. Nichols inasmuch as such opinions find little support in the currency of the medical profession, that being the clinical notes.

Finally, the undersigned finds that the ALJ fully explained his reasoning at the third step, as follows:

> [T]he claimant has not established an impairment, or combination of impairments, which meets or is medically equal to any of the Listing of Impairments . . . . The claimant's anxiety with depression results in a moderate restriction of his activities of daily living, social functioning, and concentration, persistence, or pace. The claimant has had no episodes of decompensation of extended duration. The evidence does not establish the presence of the "C" criteria of the Listing of Impairments.

A.R., at 25. Indeed, the opinions of Dr. Levine and Mr. Nichols are not the whole story, and as the administrative record reveals, plaintiff was seen by two psychiatrists, Dr. Metzger and Dr. Patel, whose opinions have not been argued by plaintiff with respect to whether plaintiff's condition met or equaled Listing 12.04.

### b. Failure to Take Medication or Follow Prescribed Course of Treatment

Plaintiff also takes issue with the ALJ's finding that he failed to follow prescribed treatment. The ALJ noted that plaintiff did not have regular treatment as evidenced by the lapse of treatment with Mr Nichols. A.R., at 27. In addition, the record shows that plaintiff was not taking medication for his mental impairments and he had not been keeping his medication appointments. A.R., at 288. In Preston v. Heckler, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an alternative basis for denying benefits, the fact finder may draw upon it to negate at any stage of the sequential analysis an otherwise allowable finding of disability. And because in the general proof scheme, this basis for denying benefits is analogous to that involving the establishment of residual functional capacity to engage in other gainful employment, the burden to establish it by substantial evidence should also be on the Secretary.

Id., at 990. The law and regulations governing the issue of failure to follow prescribed treatment or medication, as well as substantial evidence of record, support the ALJ's finding, which provides another basis supporting the ALJ's ultimate determination. Social Security Ruling 82-59 discusses "justifiable cause for failure to follow prescribed treatment" in more detail. It adds more reasons to the list set out in the above regulation, including the inability to afford treatment, which is what plaintiff appears to be arguing in this appeal. The ruling explains:

> The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. Although a free or subsidized source of treatment is often available, the claim

> may be allowed when such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the plaintiff's financial circumstances must be documented.

S.S.R. 82-59, at 5. In Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984), the appellate court upheld the ruling's requirement that a plaintiff show he or she has exhausted all sources of free or subsidized treatment and document his or her financial circumstances before a plaintiff can show good cause for failing to comply with prescribed treatment. Id. Clearly, the burden of production is the Commissioner's with respect to the issue of failing to follow prescribed treatment. See Preston v. Heckler, supra, at 990. This burden has been met by the Commissioner pointing to those places in the record where non-compliance was noted. The plaintiff did not, however, satisfy the burden of providing evidence to meet the requirements of "good cause" for failing to follow treatment due to plaintiff's financial condition. See Gordon, supra, at 237. To the extent that the ALJ discounted the plaintiff's allegations of disability on such basis, it was proper and the undersigned can find no error.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error, including additional assignments of error that were not set forth separately. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion," Richardson v. Perales, supra, the undersigned will deny plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and, therefore, affirm the decision of the Commissioner. A judgment reflecting such determinations is being filed simultaneously herewith.

Signed: April 18, 2006

Dennis L. Howell
United States Magistrate Judge